29 F.3d 581
 1994 Copr.L.Dec. P 27,296
 IMPERIAL RESIDENTIAL DESIGN, INC., a Florida Corporation;
Regal Classic Homes, Inc., Plaintiffs-Appellees,
v.
The PALMS DEVELOPMENT GROUP, INC., a Florida corporation;
Earl Peck, Jr., Defendants,
Tony Camelo, d/b/a Tony Camelo and Associates, Defendant-Appellant.
IMPERIAL RESIDENTIAL DESIGN, INC., a Florida Corporation;
Regal Classic Homes, Inc., Plaintiffs-Appellees,
v.
The PALMS DEVELOPMENT GROUP, INC., a Florida corporation;
Earl Peck, Jr., Defendants-Appellants,
Tony Camelo, d/b/a Tony Camelo and Associates, Defendant.
 Nos. 93-2309, 93-2400 and 93-2672.
 United States Court of Appeals, Eleventh Circuit.
 Aug. 23, 1994.
 
 William B. Pringle, III, Orlando, FL, for Palms & Peck.
 Michael K. Gray, Vero Beach, FL, for Tony Camelo.
 Ava K. Doppelt, Allen, Dyer, Doppelt, Franjola & Milbrath, Orlando, FL, for plaintiffs-appellees.
 Appeals from the United States District Court for the Middle District of Florida.
 Before HATCHETT and EDMONDSON, Circuit Judges, and MELTON*, Senior District Judge.
 PER CURIAM:
 
 
 1
 This appeal is the second time this court has considered whether plaintiff Regal Homes, Inc. had standing to sue defendant Tony Camelo for copyright infringement. We remand the case to the district court for the limited purpose of clarifying that court's findings of fact and conclusions of law.
 
 BACKGROUND
 
 2
 This case involves a dispute between several participants in the Florida home design and building industry. Plaintiffs-appellees are Imperial Residential Design, Inc. (Imperial) and Regal Classic Homes, Inc. (Regal); defendants-appellants are Palms Development Group, Inc. (Palms) and Tony Camelo d/b/a Tony Camelo & Associates.
 
 
 3
 In 1988, a design plan for a home named the "Regency" was drafted for Regal by Don Wilson, president of Imperial. At that time, Wilson allegedly orally transferred all his company's rights in the Regency design to Regal. In 1989, a plan which bore a striking resemblance to the Regency was drafted for Palms by Tony Camelo; that plan was named the "Chateau". Palms built and marketed several homes based on the "Chateau" design.
 
 
 4
 Believing the "Regency" design to have been copied, Regal president Michael McGuffie obtained a copyright registration form for the design and entered a written transfer of rights agreement with Wilson ("the April agreement"). Both parties later testified that this agreement was intended to reduce to writing their earlier oral agreement for rights in Regency. Then, in October 1990, Regal, acting alone, filed suit against Palms and Camelo for copyright infringement ("first action").
 
 
 5
 During the first action, defendants challenged Regal's basis for standing. They argued that while the April agreement may have transferred all rights in the Regency design from Imperial to Regal, it did not also transfer all causes of action accruing before the transfer. In response, Regal and Imperial executed a second agreement to memorialize their 1988 oral agreement ("the May agreement"). This writing specifically transferred to Regal all causes of action accruing before the transfer.
 
 
 6
 A bench trial was held September 9 and 10, 1991. The district court found that defendants had impermissibly infringed the validly copyrighted Regency plan. But, the court also found that the April agreement was the only one properly before the court, that the parties did not intend to transfer any rights in the Regency until the day that agreement was signed, and that at the time of infringement, Imperial, not Regal, owned the plan. The court concluded that Regal lacked standing to sue and dismissed the action.[1] We affirmed that ruling ("first appeal").[2]
 
 
 7
 Soon thereafter, in May 1992, Regal and Imperial together filed suit against the same defendants. In their complaint they alleged standing based on the May agreement. After several motions were filed by both parties, the trial court ruled that the May agreement would be excluded from evidence. Nevertheless, the district court allowed Regal to proceed.[3] The district court concluded, based on its findings in the first case, that defendants had, as a matter of law, infringed the copyright. The only issue submitted to the jury was damages.[4] The jury awarded Regal $75,000 in damages and Imperial $6,000. Camelo then filed a post-trial motion asserting that Regal had no standing because the May agreement was excluded and requesting that the court vacate and reverse judgement. The district court denied the motion. Camelo appeals the district court's rulings concerning standing.[5]
 
 DISCUSSION
 
 8
 We need the benefit of further explanation from the district court. It is not clear from the record why the district court concluded that Regal had standing to sue in the second suit. Nor is it plain to us why the district court denied defendants' motion to dismiss Regal, which was filed after the May agreement was excluded and decided orally at the outset of the trial.
 
 
 9
 Regal argues it had standing because it was an exclusive licensee and therefore a "beneficial owner" under copyright laws and it appears that in the exchange between the parties and the court when the court ruled orally on the motion to dismiss, Regal mentioned beneficial ownership as a basis for standing. With this status, Regal might have standing to sue. But, even a grant of exclusive licensee rights is considered a transfer of ownership rights and therefore must be in writing. See 17 U.S.C. Secs. 101, 201(d) and 201(a); see generally, 3 NIMMER ON COPYRIGHT Secs. 10.02(A), 10.02(B)(5) and 10.03(A). As already noted, the district court found in the first case that no transfer of ownership rights occurred until April 1990. So, a conclusion in the second case that Regal had standing under the beneficial owner doctrine seems to be inconsistent with the district court's finding of no standing in the first case. We will not assume the district court intended this inconsistency until we hear more from that court.
 
 
 10
 Before we can effectively review this appeal, we need an explanation from the district court about its factual and legal conclusions on the standing issue. See Farrar v. Cain, 642 F.2d 86 (5th Cir.1981). Specifically, the district court should supplement the record with a statement explaining whether or not that court considered the May agreement for standing purposes and, if it did not, on what basis the court determined Regal did have standing. The significance of the April agreements in the second suit--if that agreement was important at all to the court's decision in the second case--should also be discussed. Once we receive this additional information from the district court, we can decide the issues raised on appeal.
 
 
 11
 The case is REMANDED.
 
 
 
 *
 Honorable Howell W. Melton, Senior U.S. District Judge for the Middle District of Florida, sitting by designation
 
 
 [1]
 At the time Regal and Imperial entered into the May agreement, the district court had not yet ruled. In its October 17, 1991 order dismissing the suit, the district court said the May agreement constituted parol evidence and was not admissible. But, in December 1991, in anticipation of an appeal, the district court issued another order vacating its October order and clarifying its position. The district court said that the May agreement was not parol, but was not properly before the court because it was executed after the suit was filed
 
 
 [2]
 In the first appeal, Regal raised the following three issues: (1) the court erred in excluding the May agreement; (2) the district court erred in finding that the April agreement did not include the right to sue for infringements occurring prior to execution of that agreement; and (3) the district court erred in finding that the April agreement did not memorialize an earlier May agreement
 
 
 [3]
 Defendant Camelo's motion in limine to exclude the May agreement was granted after the deadline for filing motions had passed. Citing the exclusion ruling, defendants immediately sought leave of the court to file a motion to dismiss Regal for lack of standing. The motion was denied at the outset of the trial
 
 
 [4]
 Plaintiffs also raised a Lanham Act claim. Defendants obtained a directed verdict on that count. As the prevailing party on that claim, Camelo sought, but was denied, attorney's fees. Camelo's argument that he should have been awarded fees is dependent, in part, on whether he prevails with his argument about standing. Because we remand this case for expansion of the record, we do not consider this argument now. We will consider the issue when we receive the requested information from the trial court
 
 
 [5]
 Camelo also appeals the district court's failure to submit special verdicts to the jury and the court's refusal to allow the jury to consider the copyright infringement concepts of notice on a copyrighted work and uniqueness. Sufficient evidence was presented at the first trial--and adopted by the court in the second trial--to support the district court's conclusions that these issues should not go to the jury and that special verdicts were not necessary. The district court did not abuse its discretion in making these rulings